J-A25008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN LEE WARNER | : | |
| | : | |
| Appellant | : | No. 274 WDA 2023 |

Appeal from the Order Entered August 18, 2022
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0000307-2020

BEFORE:   BOWES, J., KUNSELMAN, J., and COLINS, J.[*]

CONCURRING STATEMENT BY COLINS, J.:          **FILED: APRIL 3, 2024**

I fully agree with the majority's conclusion that the trial court erred by denying Appellant's Rule 600 motion. I write separately, however, to highlight that the result here is mandated by the standard outlined in ***Commonwealth v. Harth***, 252 A.3d 600 (Pa. 2021), which, under the instant factual scenario, punishes the Commonwealth for a period of delay over which it had no control. Rather, during the first half of 2021 when the court system was emerging from the COVID shutdown, this matter was twice relisted *en masse* by court administration. The Commonwealth had no say over that necessary administrative decision, and that decision put trial past the adjusted run date. To attribute the resulting delay to the Commonwealth and thereby dismiss the case pursuant to Rule 600 undermines society's right to punish and deter

---

[*] Retired Senior Judge assigned to the Superior Court.

crime. **Harth**, however, obligates us to first review the Commonwealth's diligence since the inception of the case, which was prior to the pandemic. Here, the Commonwealth failed to present evidence of its diligence and, accordingly, I concur in the result.

In **Harth**, the Supreme Court mandated that the Commonwealth must always demonstrate its due diligence whenever the trial court is a possible cause of delay, in whatever circumstances. The result is that we must dismiss proper prosecutions even where the Commonwealth was not at fault and could have done nothing to speed the case along during the time in question. This is contrary to the long-standing rule that, "[s]o long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, [Rule 600] must be construed in a manner consistent with society's right to punish and deter crime." **Commonwealth v. Bradford**, 46 A.3d 693, 702 (Pa. 2012); **Commonwealth v. Monosky**, 511 A.2d 1346, 1348 (Pa. 1986); **Commonwealth v. Genovese**, 425 A.2d 367, 371 (Pa. 1981); **See also Commonwealth v. Ramos**, 936 A.2d 1097, 1100 (Pa. Super. 2007) (*en banc*); **Commonwealth v. Hunt**, 858 A.2d 1234, 1238–1239 (Pa. Super. 2004) (*en banc*).

**Harth** treats all possible court delay as one category and forged a one size fits all rule. **Harth**, 252 A.3d at 618 ("we hold that, in ruling on a defendant's Rule 600 motion to dismiss, a trial court must first determine whether the Commonwealth has met its obligation to act with due diligence

- 2 -

throughout the life of the case; … only then may the trial court rely upon its own congested calendar or other scheduling problems as justification for denying the defendant's motion"). But not all court delay is the same.[1] The rule announced in **Harth** was reasonable under the circumstances presented because there were multiple continuances of trial caused by the Commonwealth and/or the court. **See Harth**, 252 A.3d at 603-606. Strict application of **Harth** is less reasonable, and contrary to developed case law, where the court is the principal cause of delay.[2] For example, delay caused by court administration scheduling pre-trial events was excludable at the discretion of the trial court prior to **Harth**. **See Commonwealth v. Mills**, 162 A.2d 323, 325 (Pa. 2017) (trial courts "have discretion … to differentiate between time necessary to ordinary trial preparation and judicial delay arising out of the court's own scheduling concerns"). Sometimes the key period of delay is the application of a court-administered policy transferring a class of

_____

[1] By delay, I refer to any period of time that passes before trial is held and the cause of it, in the same way as it is used in Speedy Trial jurisprudence. **See Doggett v. United States**, 505 U.S. 647, 657 (1992) ("**Barker** made it clear that 'different weights [are to be] assigned to different reasons' for delay") (*quoting* **Barker v. Wingo**, 407 U.S. 514, 531 (1972)). "Justifiable" court delay in processing the case carries no weight in the balancing. **See United States v. Loud Hawk**, 474 U.S. 302, 315 (1986); **Commonwealth v. Ware**, 329 A.2d 258, 264 (Pa. 1974). Court delay caused by docket congestion carries nominal weight. **Barker**, 407 U.S. at 531; **Commonwealth v. Hailey**, 368 A.2d 1261, 1267 (Pa. 1977).

[2] Former Rule 600 "was rescinded and new Rule 600 adopted to reorganize and clarify the provisions of the rule in view of the long line of cases that have construed the rule." Pa.R.Crim.P. 600, comment.

cases to a specific court for hearing to process all cases more efficiently at the preliminary hearing stage, which delay was formerly deemed "excusable" to extend the run date. *See Ramos*, 936 A.2d at 1104 ("Since the complexity of this case and the clogged trial court docket are circumstances beyond the control of the Commonwealth, the trial court did not abuse its discretion in finding that the 82–day period between May 22 and August 12, 2003 is excusable"). Where the Commonwealth has no ability to affect administrative scheduling by the court, *Harth* only creates a windfall for an accused without meaningfully increasing the incentive or opportunity to hold trial on time.

This case presents a variation on the administrative (re)scheduling of court dates. Here, the Court of Common Pleas of Blair County suspended Rule 600 from November 25, 2020, to February 23, 2021, and then tried to address the backlog of criminal cases. There were too many cases for the March 22 trial list review, and so this case along with "all cases involving non-incarcerated defendants" were *en masse* set for the trial list review on May 24, and then this case was "again administratively moved" to the August 2, 2021, trial list review. Maj. Dec. 10. The order relisting the case explicitly stated that the time attributable to the delay should be charged to the court for the purposes of an accused's eligibility for nominal bail. At issue here, is whether that time, 159 days from February 24 to August 2, 2021, should be attributed to the court or the Commonwealth for calculating the run period. Supplementary Trial Court Opinion, 4. The trial court ruled that the delay was attributable to the court. Indeed, common sense says that the 159 days of

necessary delay caused by court administration rescheduling the case as the entire system emerged from the judicial emergency should be attributed to the court.

*Harth* requires a different result. The trial court found a lack of due diligence by the Commonwealth a year before the period at issue. Supplementary Trial Court Opinion, 7. More specifically, the trial court found that the Commonwealth lacked due diligence at the very start of the pandemic when this case was not listed, by court administration, for the preliminary trial conference on April 27, 2020, after the formal arraignment had been held on March 13, 2020. N.T. 6/9/22, 17-18. The testimony from the court administrator witness was inconclusive as to fault, but established that the key procedural meeting to ensure proper scheduling likely did not occur during March and April 2020. N.T. 6/9/22, 19. More importantly, this oversight occurred when Rule 600 was in fact suspended by the President Judge, from March 15, 2020, two days after the preliminary arraignment, until June 15, 2020, which was more than six months before the judicially caused delay of 159 days from February 24 to August 2, 2021 at issue in this appeal. Trial Court Supplemental Order, 3.

In addition, the trial court ruled the Commonwealth did not calculate when the "case should be called for trial." Supplementary Trial Court Opinion, 7. The failure of the Commonwealth to evaluate potential Rule 600 issues in a given case is a proper factor to weigh in the due diligence inquiry. *See Commonwealth v. Browne*, 584 A.2d 902, 906 (Pa. 1990). On the issue of

due diligence, the Commonwealth had the burden of proof. ***Commonwealth v. Kearse***, 890 A.2d 388, 393 (Pa. Super. 2005). As the majority rules, the Commonwealth "failed to present any evidence or argument that it acted diligently," which thereby precludes consideration of the obvious judicial delay from February 24 to August 2, 2021. Maj. Dec., 12.[3]

***Harth*** requires this result, but I believe that the rule in ***Harth*** is overbroad and should not require the Commonwealth to prove its due diligence with respect to court administration scheduling over which it had no control and no opportunity to change.[4] I concur in the result, because it is the

_____

[3] In evaluating the Commonwealth's due diligence, the majority recites the allegations by defense counsel that he made several calls to the assigned prosecutor in April and May of 2020, and then to the First Assistant District Attorney in June and July 2020. Maj. Dec. 8. In my opinion, a defense attorney's phone call to a prosecutor should not create an obligation on the prosecutor to do something to demonstrate diligence, because it would only incentivize defense counsel to make busywork for the prosecution in the hope of creating a due diligence trap. In this instance, the purpose of the calls, as described by counsel, were to inform the prosecutor of his belief, based on "hearsay," that the complainant wanted to withdraw charges against his client and to then "resolve" the case. N.T. 6/9/22, 5-7. The Commonwealth is not obligated to offer a plea deal or to withdraw charges because a complainant wishes to. Therefore, I believe that it should not be tasked for due diligence purposes with an obligation to respond to defense phone calls seeking either result.

[4] I note that the Supreme Court may soon give greater guidance on how this Court and the trial courts should view the intersection of Rule 600 and judicial emergencies. ***See Commonwealth v. Lear***, 290 A.3d 709, 719 (Pa. Super. 2023), ***appeal granted in part***, No. 240 MAL 2023, 2023 WL 6416182 (Pa. Oct. 3, 2023) ("whether a court must assess the Commonwealth's due diligence during a worldwide pandemic for purposes of Rule 600 before it excludes delay attributable to a local judicial emergency during which the president judge cancelled and suspended all trials").

role of this Court to "apply the decisional law as determined by the Supreme Court of Pennsylvania," **Matter of M.P.**, 204 A.3d 976, 986 (Pa. Super. 2019), and I find no fault in the majority's application of binding caselaw.